IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GRAY CONSTRUCTION, INC.** | * |
| | * |
|     Plaintiff / Counterclaim Defendant | * |
| | * |
| v. | * |
| | * |
| **MEDLINE INDUSTRIES, INC.** | * |
| | * |
|     Defendant / Counterclaim Plaintiff | * |

| | | |
|---|---|---|
| **MEDLINE INDUSTRIES, INC.** | * | |
| | * | |
|     Third-Party Plaintiff | * | |
| | * | Civil Case No.: SAG-19-03405 |
| v. | * | |
| | * | |
| **YORK BUILDING PRODUCTS CO., INC.,** *et al.* | * | |
| | * | |
|     Third-Party Defendants | * | |

| | |
|---|---|
| **YORK BUILDING PRODUCTS CO., INC.,** | * |
| | * |
|     Third-Party Counterclaim Plaintiff | * |
| | * |
| v. | * |
| | * |
| **MEDLINE INDUSTRIES, INC.** | * |
| | * |
|     Third-Party Counterclaim Defendant | * |
| | * |

* * * * * * * * * *

## MEMORANDUM OPINION

On March 1, 2023, this Court denied in part and granted in part a motion for partial summary judgment filed by York Building Products Co., Inc. ("York") against Medline Industries, Inc. ("Medline"). York's motion was one of five motions for summary judgment in a case about a failed retaining wall. Presently, York asks this Court to reconsider its decision to deny in part

York's partial motion for summary judgment. The motion to reconsider presents no new argument or facts and no significant law or facts this Court overlooked or misunderstood. This Court has considered York's motion, ECF 288, Medline's opposition, ECF 294, and York's reply, ECF 300. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, York's motion will be denied.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision" that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time" before entry of a final judgment. *See also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469–70 (4th Cir. 1991) (approving the trial court's reference to Rule 54(b) in reconsidering its ruling on the defendant's Rule 12(b)(6) motion to dismiss); *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 618 (D. Md. 2013) ("Motions for reconsideration of an interlocutory order are governed by Federal Rule of Civil Procedure 54(b) . . . ."). In this Court, motions for reconsideration must be filed within fourteen days after the Court enters the order. *See* Loc. R. 105.10 (D. Md. 2021).

While the Fourth Circuit has not clarified the precise standard applicable to motions for reconsideration, *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 449 (D. Md. 2015), it has stated that motions for reconsideration "are not subject to the strict standards applicable to motions for reconsideration of a final judgment" under Rules 59(e) and 60(b), *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003)); *see Fayetteville Investors*, 936 F.2d at 1470 (expressing "vigorous[] disagree[ment]" with a trial court's use of a Rule 60(b) standard in reconsidering its previous order

on a Rule 12(b)(6) motion). However, courts in this District frequently look to the standards used to adjudicate Rule 59(e) and 60(b) motions for guidance when considering Rule 54(b) motions for reconsideration. *Carrero*, 310 F. Supp. 3d at 584; *Butler*, 307 F.R.D. at 449; *Cohens v. Md. Dep't of Human Resources*, 933 F. Supp. 2d 735, 741 (D. Md. 2013); *see also Fayetteville Investors*, 936 F.2d at 1470 (positively discussing a district court's reference, but not strict adherence, to the Rule 60(b) standards in reconsidering its prior ruling) (citing *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102 (M.D. Pa. 1989)).

Motions to amend final judgments under Rule 59(e) may only be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Further, Federal Rule of Civil Procedure 60(b) explicitly provides that a court may only afford a party relief from a final judgment if one of the following is present: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief." In light of this guidance, "[m]ost courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions." *Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 629 (D. Md. 2015); *see also id.* ("Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." (quoting *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide*, 921 F. Supp. 2d 470, 481 (D. Md. 2013))). As a general matter, "'a motion to reconsider is not a license to reargue the merits or present new evidence' that was previously available to the movant." *Carrero*, 310 F. Supp. 3d at 584 (quoting

3

*Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001)). Ultimately, the decision to reconsider interlocutory orders rests in this Court's "broad discretion." *Am. Canoe Ass'n*, 326 F.3d at 515.

## II. DISCUSSION

The relevant background is set forth in this Court's March 1, 2023 memorandum opinion, ECF 281. In the present motion, York asks this Court to reconsider a single issue – whether Medline presented evidence that York's alleged construction defects caused the retaining wall's failure. ECF 288-1 at 2. This Court has already addressed and answered this question. In response to York's first time raising this argument in its motion for partial summary judgment, this Court explained that Medline presented evidence connecting York's alleged negligence to the wall's failure:

> York argues that Medline has not presented any evidence that its failure to stop and investigate caused the wall's ultimate failure. Mr. Protasiewicz testifies that York's construction subcontractor improperly used fiberglass shims, failed to halt construction upon observing the wall's ongoing movement, and failed to recognize that the wall was settling as it was being built. ECF 202-1 at 76. Mr. Protasiewicz further avers that these actions were inconsistent with the skill and ability normally employed by professional engineers and were a direct and substantial cause of the failure of the retaining wall. *Id.* at 77. He specifically states in the Supplemental Global Evaluation Report, that "[t]he settlement of the wall during construction should have resulted in the stoppage of the wall and implementation of proper corrective measures." *Id.* at 76. Given that Mr. Protasiewicz is qualified to testify on the mode of the wall's failure, *see* ECF 275 at 16, these conclusions are admissible. Thus, Medline has presented sufficient evidence on which a jury could reasonably find that York's negligent construction of the wall caused the wall to fail.

ECF 281 at 13. With respect to the alleged breach of contract, this Court also noted that Medline presented evidence to suggest this breach caused the wall's failure. This Court wrote:

> Mr. Protasiewicz identifies this deviation [of geogrid layers] as a "contributing factor" to the wall's failure. ECF 202-1 at 71. Thus, Medline has established a genuine issue of material fact about whether York breached its contract by failing to construct the wall in accordance with GTA's design.

ECF 281 at 12. Thus, this Court concluded that Medline put forward admissible expert testimony that York's alleged breach of contract and negligence caused the retaining wall's failure.

In its motion to reconsider, York argues that Medline's expert evidence is insufficient, irrelevant, or contradicted by other evidence. It is the responsibility of the factfinder at trial to assess and weigh contradictory evidence. At this stage of litigation, this Court need only ensure that Medline presented evidence sufficient for a reasonable factfinder to find in its favor. *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011). As this Court has already explained, Medline presented sufficient, admissible expert evidence to present a question of fact on the issue of causation. York's contradictory evidence demonstrates the disputed nature of this factual question but does not alter this Court's ruling on summary judgment.

### A. Negligence

Medline's expert report states the following:

> York/Griffith/GTA: Based on our observations during deconstruction, that the wall was settling even as it was being constructed, as evidenced by frequent reshimming of the block wall and cracking in the base blocks. The settlement of the wall during construction should have resulted in the stoppage of the wall and implementation of proper corrective measures. The improper use of the ½ inch diameter fiberglass pins as shims at the back of the block was observed in multiple rows of the retaining wall (Course numbers 4, 10, 11, 12, 13, 18, 19, 21, 22 and 28), sometimes for hundreds of linear feet. Furthermore, the fractured/splintered pins and fracturing of the back face of the block at numerous locations, is consistent with the improper point loading of the block. York and its subcontractor, Griffith Brothers should have recognized that the retaining wall was moving as the wall was being constructed and they should have stopped construction while the cause of the movement was determined. . . . The work performed by York and subcontractor Griffith Brothers, Inc. in the construction of the

5

> retaining wall, including the use of these fiberglass pins as shims, was both defective and not performed with a reasonable degree of care, skill and ability which is normally employed by contractors their industry. . . . *The failings of York, Griffith and GTA identified here were a direct and substantial cause of the failure of the retaining wall.*

ECF 202-1 at 76–77 (emphasis added). Thus, this expert report explicitly links York's alleged negligence (*i.e.*, York's improper use of shims and failure to halt construction) to the wall's failure.

Nonetheless, York argues that there is no evidence in the record suggesting that York's use of fiberglass pins as shims caused the failure. ECF 288-1 at 8. The above excerpt of the expert report suggests otherwise. The report states that the use of fiberglass pins as shims was "not performed with a reasonable degree of care" and the "failings of York" "were a direct a substantial cause of the failure of the retaining wall." When asked to clarify what "failings" the report refers to, Mr. Protasiewicz responded, "this is related to the – to not identifying the settlement that was occurring and that could have been identified by the parties that were present in the field at the time. There was also a use of a shim that is not acceptable in the industry. It's not acceptable to use that size of a shim or that type of a shim. So it was a mixture of the two items that we're talking about here." ECF 196-15 at 105, 419:21–420:7. Thus, Medline presents sufficient evidence to suggest that York's negligence caused the wall's failure. York points to Mr. Protasiewicz's later suggestion in his deposition that the shims "did not contribute to the sliding failure that occurred, but the fact they had to keep being installed as the wall was being constructed" presented concern. *See id.* at 421:2–4. However, this seemingly contradictory statement only generates a disputed issue of fact. York will have an opportunity to cross examine Mr. Protasiewicz about any inconsistent conclusions at trial.

Aside from improper shimming, Medline presents evidence that York's failure to halt construction upon noticing the wall settling during construction also substantially caused the wall's

failure. ECF 202-1 at 76–77. York takes issue with this conclusion and argues: "Contrary to the conclusion in his Report that failing to stop construction was a 'direct and substantial cause' of the wall's failure, Mr. Protasiewicz's testimony reveals that York's role in that inaction was, at best, a speculative and indirectly related to the eventual sliding failure." ECF 288-1 at 11. This argument demonstrates the disputed nature of this issue. York acknowledges that the expert report finds a causal link. At this stage of litigation, this Court is satisfied that Medline's expert report presents evidence sufficient for a reasonable factfinder to conclude York's inaction caused the wall's failure, and any contradictory evidence may be properly weighed by a factfinder.

Finally, York argues that Medline's expert only links York's alleged negligence to a *bearing* failure, but the cause of the wall was a *sliding* failure. ECF 288-1 at 9, 10 & n.17. However, Mr. Protasiewicz is equivocal on this point throughout his testimony. He acknowledges that the report concludes there was evidence of a sliding failure by November 2018, ECF 196-15 at 95, 378:9–10; however, he notes other problems occurred during the wall's construction, including the wall's settlement and unstable underlying soil conditions, *id.* at 94, 377:15–378:4. Thus, the reason for the ultimate failure of the wall remains a question of fact.

Even if the ultimate failure was a sliding failure, Medline's expert report links York's alleged negligence to the cause of the wall's failure generally. ECF 202-1 at 76–77. Thus, Medline has presented evidence to permit a reasonable factfinder to conclude that York's negligence caused the wall's failure, regardless of the type of failure. Any suggestion by Mr. Protasiewicz to the contrary would be used to undermine the report's conclusion, but it nonetheless remains a material factual dispute for trial.

### B. Breach of Contract

With respect to York's alleged breach of contract, in his report, Mr. Protasiewicz introduces a list of "contributing factors" that resulted in the wall's sliding failure. ECF 202-1 at 71. These factors include York and Griffith Brothers' failure to install the number of geogrid layers called for in the plans for the retaining wall. *Id.* at 77. Although the report lists this action as a "contributing" factor rather than a "substantial" factor, in ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). An expert report identifying a party's failure to follow contractual standards as a contributing factor to the resulting damages sufficiently generates a factual dispute over whether York's alleged breach of contract was a substantial factor in the wall's failure.

Thus, Medline presents sufficient evidence to support its claims that York's alleged actions or inactions did in fact cause the retaining wall's failure.

### III. CONCLUSION

For the reasons stated above, York's motion for reconsideration, ECF 288, is DENIED. A separate Order follows.

Dated: May 3, 2023                                            /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge