IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GRAY CONSTRUCTION, INC.,** | * |
| Plaintiff / Counterclaim Defendant, | * |
| v. | * |
| **MEDLINE INDUSTRIES, INC.** | * |
| Defendant / Counterclaim Plaintiff, | * Civil Case No.: SAG-19-03405 |
| **MEDLINE INDUSTRIES, INC.,** | * |
| Third-Party Plaintiff, | * |
| v. | * |
| **YORK BUILDING PRODUCTS CO., INC.,** *et al.* | * |
| Third-Party Defendants. | * |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case, in relevant part, seeks to apportion costs relating to a failed retaining wall. Gray Construction, Inc. ("Gray"), a contractor hired by Medline Industries, Inc. ("Medline") to construct a medical distribution facility, sued Medline for failure to pay. Medline filed counterclaims against Gray and third-party claims against the original owner of the property, York Building Products Co., Inc. ("York"), York's subcontractors, Morris & Ritchie Associates, Inc. ("MRA") and Geo Technology Associates, Inc. ("GTA"), and Gray's subcontractors, Allan Myers, L.P. ("Allan Myers") and DGS Construction, LLC T/A Schuster Concrete Construction ("Schuster"), primarily asserting these contractors and subcontractors' actions caused the failure of Medline's retaining wall. *See* ECF 51. This Court granted Medline's motion to join its claims against York, Allan Myers, GTA, and MRA with its claims relating to Gray. *See* ECF 97 at 11–18. Subsequently,

Schuster and Medline settled, and the Court terminated Schuster as a third-party defendant. *See* ECF 98. Following discovery and motions for summary judgment, this Court terminated MRA as a third-party defendant. *See* ECF 282.

Presently, all remaining parties except for Medline request this Court to sever claims relating to York and GTA from claims relating to Gray and Allan Myers, and to hold separate trials. Specifically, Gray and Allan Myers (collectively "Movants") jointly filed a Motion to Sever or, in the Alternative, to Conduct Separate Trials ("the Joint Motion"), ECF 286, and York and GTA filed a memorandum opinion in support of the Joint Motion, ECF 293. Medline filed an opposition, ECF 297, and the other parties filed replies, *see* ECF 303, 306. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Gray and Allan Myers's Joint Motion will be GRANTED.

## I.   DISCUSSION

The relevant background is set forth in this Court's March 1, 2023 memorandum opinions. *See* ECF 281, 283.

Rule 21 of the Federal Rules of Civil Procedure states, in part, that "[a]ny claim against a party may be separated and proceeded with separately." FED. R. CIV. P. 21. Further, 'the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b).[1] "The party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to

---

[1] As explained in other cases, "[i]n ordering severance, this Court may proceed under either Rule 21 or Rule 42(b). Professors Wright and Miller have observed that courts tend to use the terms 'severance' and 'separate trials' interchangeably. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2387 (1971)." *See In re All Asbestos Cases Pending in the U.S. Dist. Ct. for the Dist. of MD*, No. BML-1, 1983 WL 808161, at *4 (D. Md. Dec. 16, 1983).

2

the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 975 (4th Cir. 2020) (quoting *F&G Scrolling Mouse, LLC v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1999)) (internal quotation marks omitted).

"A district court has broad discretion in deciding whether to grant severance." *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007). "That discretion is guided by 'a presumption in favor of the nonmoving party that all claims in a case will be resolved in a single trial and not be severed, placing the burden on the party moving for severance to show that (1) it will be severely prejudiced without a separate trial; and (2) the issue to be severed is so "distinct and separable" from the others that a trial of that issue alone may proceed without injustice.'" *Hudock v. Kent Cnty. Bd. of Educ.*, No. CIV. CCB-14-2258, 2015 WL 1198712, at *18 (D. Md. Mar. 16, 2015) (quoting *Equal Rights Ctr.*, 483 F. Supp. 2d at 489 (in turn quoting *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 548–49 (S.D.N.Y. 2005))). "Claims that relate to different factual events can be severed to prevent confusion and to create discrete litigation units." *Sanders v. Callender*, No. CV DKC 17-1721, 2018 WL 337756, at *13 (D. Md. Jan. 9, 2018).

"In determining whether severance is proper, courts consider: (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed." *Equal Rts. Ctr.*, 483 F. Supp. 2d at 489 (citing *German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995). This Court considers each factor in turn.

A. **Discreteness of Issues**

Gray initiated the lawsuit; however, it is helpful to view the case from Medline's perspective. Although not all claims have survived the motion to dismiss and motion for summary judgment stages, Medline originally asserted claims against every other party for (1) breach of contract, (2) negligence, (3) breach of express warranty, and (4) breach of implied warranty. Indeed, as this Court has previously recognized, all of these counterclaims/third-party claims[2] arise from the same construction project and predominantly revolve around the same question: what caused the retaining wall to fail? *See* ECF 97 at 14. Despite this categorical similarity, however, the precise factual and legal issues against each party are distinct. Claims against GTA and York involve alleged misconduct during the design and construction of the retaining wall, which ended in November 2017. In contrast, claims against Allan Myers and Gray involve alleged misconduct during the installation of subsequent "post-closing" work, such as construction of a stormwater conveyance system and asphalt pavement, which began in the spring of 2018 and continued thereafter.[3] Indeed, Medline alleged all of these actions led to the wall's eventual failure. But for

---

[2] Many of the legal claims discussed are either counterclaims brought by Medline against Gray or third-party claims brought by Medline against York, GTA, and Allan Myers. For the sake of brevity and clarity, this Court refers to third-party claims and counterclaims generally as "claims" throughout this memorandum opinion.

[3] In its Opposition, ECF 297 at 15–16 (citations omitted), Medline lists the remaining claims:

- **Medline/Gray Claims.** Medline has five claims against Gray, all of which relate to Gray's substantial contribution to the failure of the retaining wall and its failure to fully, correctly, and timely complete its work on the Project: (1) breach of contract, (2) negligence, (3)

4

each of Medline's claims, a factfinder must consider the specific action of the specific party, sometimes under a distinct contractual standard, independent from the actions of any other party. From the factfinder's vantage, Medline's claims against each party are discrete.

For the breach of contract and breach of warranty claims, Medline relies on a different set of contractual documents and distinct set of theories of liability against each party. For example, to succeed on its breach of contract claim against York, Medline relies on the Purchase and Sale Agreement and must prove that York's failure to adhere to GTA's recommended number of geogrid layers during construction of the wall was a substantial factor in the retaining wall's failure. In contrast, to bring its breach of contract claim against GTA, Medline relies on its status as a third-party beneficiary to the written and unwritten agreements between York and GTA to

---

breach of express warranty, (4) breach of implied warranty, and (5) declaratory judgment. Gray has three claims remaining against Medline: (1) breach of contract for nonpayment of amounts claimed in certain PCDs, (2) enforcement of a mechanic's lien due to the unpaid PCDs, and (3) wrongful termination of the Medline/Gray Contract based on the theory that Medline terminated after "Gray had already substantially performed."

- **Medline/Allan Myers Claims.** Medline has four claims against Allan Myers—(1) breach of contract, (2) negligence, (3) breach of express warranty, and (4) breach of implied warranty— all arising from Allan Myers'[s] defective work on the Project, including the porous asphalt and the leaky storm water controls, which substantially contributed to the failure of the retaining wall. Allan Myers brought a counterclaim against Medline seeking a mechanic's lien due to Medline's alleged failure to pay for work Allan Myers performed on the Project.

- **Medline/GTA Claims.** Medline has four claims against GTA, all stemming from its failure to properly design and oversee the construction of the retaining wall, which substantially contributed to the failure of the wall. They include: (1) breach of contract; (2) negligence; (3) breach of express warranty, and (4) breach of implied warranty. GTA has not asserted any counterclaims against Medline.

- **Medline/York Claims.** Medline has two claims against York remaining for trial: (1) breach of contract for failing to properly construct the retaining wall and its failure to indemnify Medline for failure of retaining wall, and (2) negligent construction of the retaining wall. York has one counterclaim against Medline seeking a declaratory judgment as to the amount, if any, owed to York from the $2,000,000 escrow established to fund the completion of the Post-Closing Work if York did not finish it.

assert that GTA improperly designed and inspected the wall's construction. These claims are even more distinct from Medline's contractual claims against Allan Myers and Gray. For its breach of contract claim against Allan Myers, Medline relies on its third-party beneficiary status to the agreement between Allan Myers and Gray. To prevail on its claim, Medline must prove allegations like Allan Myers failed to sufficiently replace insufficiently thick asphalt as contemplated by the agreement, Allan Myers used larger-than-recommended aggregate in the asphalt mix, causing impermissibly permeable pavement, or Allan Myers improperly installed the stormwater conveyance system, causing the retaining wall's failure. As for Gray's allegation of nonpayment against Medline, the issues involve a flurry of change orders, the suitability of Gray's work under the written agreement between Medline and Gray, and the impact of the "wettest summer since observations began in 1870." *See* ECF 283 at 14. In short, while the contractual claims all arise from the same construction project, their similarities end there. A factfinder need not consider the contractual issues jointly, and as discussed below, doing so would likely result in confusion.

The same is true for Medline's negligence claims. To prevail, Medline must prove independent proximate causation between each party's conduct and Medline's alleged damages. *See State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 452 (D. Md. 2019) ("Proximate cause is a necessary element in actions for negligence[.]"). "A defendant's conduct is the proximate cause of a plaintiff's injury when it is '1) a cause in fact, and 2) a legally cognizable cause.'" *Id.* (citing *Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009). "The causation-in-fact inquiry asks whether defendant's conduct actually produced an injury." *Id.* (internal citations omitted). "Maryland courts have developed two tests to determine whether the requisite causation exists: the 'but-for test' and the 'substantial factor' test." *Id.* The latter "substantial factor" test is relevant here because Medline accuses multiple parties of causing the wall's failure. As explained in *Exxon Mobil*:

> The Maryland Court of Appeals has also adopted the substantial factor set forth in the Restatement (Second) of Torts (1965) ("Restatement"). . . . Under the substantial factor test, the requisite causation may be found if it is "'more likely than not'" that the defendant's conduct was a substantial factor in producing the plaintiff's injuries. . . . This test applies when two or more independent acts bring about an injury.

*Id.* at 453 (internal citations omitted). Thus, for each party, Medline must prove that the party's conduct was a substantial factor in the wall's failure. Such an inquiry is independent of the liability of any other parties in the case.

Medline presents examples where its claims potentially overlap. For example, it argues that Gray's claims against Medline for non-payment and a mechanic's lien "almost wholly depend on, the outcome of Medline's claims in this case concerning the failure of the retaining wall and the other defects in the Project." ECF 297 at 18. However, Gray's claims depend on the outcome of Medline's claims against *Gray* for failure of the wall—not other parties. If Gray is not liable for the wall's failure, then Medline improperly withheld payment against Gray. The liability of other parties is inapposite to Gray's claims. In short, the fact that all parties allegedly caused the same harm does not necessitate a single trial.

Given the above reasons, this Court views the discreteness factor as weighing in favor of severance—the claims stand on their own and joint consideration could lead to confusion.

### B. Witnesses and Documentary Proof

Medline retained one expert witness, Justin Protasiewicz, to present expert testimony for all of its claims against all parties. *See* ECF 281 at 23 n.8. It has proffered multiple reports, including a "Supplemental Global Report" that summarizes all of Mr. Protasiewicz's findings against all parties. *See* ECF 202-1. This Court has granted in part some of the parties' motions to exclude Mr. Protasiewicz's testimony for lack of relevant expertise, *see* ECF 281 at 23 (granting summary judgment for third-party defendant, MRA), but has permitted his testimony in part

against the remaining parties opposing Medline's claims. In contrast, all other parties have designated their own expert witnesses to oppose the findings of Mr. Protasiewicz. Likewise, the parties have submitted their own expert findings and reports.

Given that each claim raises distinct issues, it is unsurprising that each claim requires its own basis of evidentiary support. For example, for its claims against Allan Myers, Medline will have to present Mr. Protasiewicz's testimony that the large aggregate size of the asphalt installed by Allan Myers contributed to the asphalt's impermissible permeability, or that the leaking stormwater system led to a buildup of water pressure behind the wall. For Gray's claims against Medline, Gray will have to present evidence that the rainfall during its construction of the stormwater conveyance system (and other projects) during the summer of 2018 justified its delays in completing its work. For Medline's claims against York, Medline will need to show evidence that the improper number of geogrid layers or a failure to stop construction led to the wall's failure. For Medline's claims against GTA, it will need to show how the wall design was improper. In short, for each claim, against each party, there is distinct evidence.

Medline asserts that it would have to introduce many of the same reports in both trials. For some of Medline's expert reports, such as the "global" reports, ECF 201-23, 202-1, this would likely be true because of the reports' omnibus nature. The "Supplemental Global Evaluation Report, ECF 202-1, is the most cited by Medline in this case. This 109-page report compiles all of the alleged causes of the retaining wall into a single report. However, the section reviewing the retaining wall's design, ECF 202-1 at 59–66, is relevant to Medline's claims against GTA, whereas the section related to the stormwater conveyance system's design is related to Medline's claims against Allan Myers and Gray, *id.* at 67–77. Further, the report breaks down its allegations by party. *See, e.g., id.* at 71–75. Where the report does combine allegations, it does so in a manner

consistent with Movants' proposed severance of issues. *E.g.*, *id.* at 76 (listing construction failings contributing to the wall's failure "[r]egarding Gray and its subcontractor Allan Myers," and the same for "[r]egarding York, its subcontractor Griffith Brothers and GTA[.]"). Thus, the need to introduce certain portions of the global report in both trials is due to the report's design and is not a reflection of the overlap of evidence against the parties.

Medline also argues it will have to call the same witnesses for both trials. This Court recognizes that some overlap is inevitable on a construction project with multiple parties and moving parts. Moreover, duplication of witnesses is especially true for Medline, as the owner of the property and overseer of the construction project. Medline is in the middle of the web of contractors and subcontractors, having worked either directly or indirectly with every other party. Thus, Medline's employees who oversaw the entirety of the construction project, such as its project manager, will understandably have to testify in both trials.

Nonetheless, there is considerable benefit to trying such issues separately. The claims brought by Medline are numerous, fact-intensive, and highly technical. As explained below, not all claims will be decided by a jury—this Court will decide some claims against Allan Myers and issues relating to mechanic's liens. It would be prudent for this Court to separately hear matters and evidence that do not require a jury's attention. Although this may duplicate some witnesses and evidence, it would substantially cut down on the evidence and argument heard before a jury. In short, severance of these issues ultimately serves judicial economy.

Thus, recognizing the burden of unnecessary evidence on the jury and the general distinctness of the evidence against each party, this Court considers this factor as weighing in favor of severance.

## C. Prejudice to Parties

Medline asserts that severance will enable other parties to employ an "empty chair defense," blaming absent parties for the wall's failure and creating the risk of inconsistent judgments. ECF 297 at 23. Perhaps this would be true if only one party could be liable. However, as discussed above, Medline must prove each party's liability independent of the liability of other parties. A factfinder could find all, some, or none of the parties liable. Even if a factfinder found the build-up of hydrostatic pressure due to a leaky stormwater conveyance system was a "substantial factor" in the wall's failure, that same factfinder could find that an improper wall design likewise was a "substantial factor" in its failure. The parties may blame one another, but doing so does not absolve them of their own liability. Thus, severance does not prejudice Medline.

In contrast, York and GTA argue that the presence of other parties will bias them because Medline will receive the benefit of the other parties' sparring experts. For example, Medline will likely argue that Allan Myers's stormwater system was leaky, and then Allan Myers will argue its system was not leaky and in fact it was GTA's wall design that caused the wall's failure. For its part, GTA may also argue that Allan Myers's leaky system, not GTA's wall design, caused the wall's failure. If the claims are tried together, then, a jury would hear from two parties' experts (Medline and GTA) against Allan Myers. If the trials were separate, the factfinder considering Medline's claims against Allan Myers would only hear from Medline's expert.

Additionally, Movants argue that the failure to sever will prejudice them by denying them their contractually bargained-for bench trial for matters arising from their subcontract.[4] This includes Medline's claims against Allan Myers, because Medline relies on its status as a third-party beneficiary to the subcontract. *See* ECF 51 ¶¶ 206, 215, 220. Relatedly, Movants argue that a judge, not a jury, must rule on their mechanic's lien claims. ECF 286-1 at 11–12. As Medline notes, however, both a judge and jury can serve as factfinder on different issues in a single trial. While this Court therefore discounts Movants' prejudice argument, judicial economy would greatly benefit from severance of non-jury issues from the jury issues, given the complexity and technical nature of the claims.

In short, this is a cumbersome case with many claims against many parties, not all of which can be heard before a jury. Consideration of judicial economy and the above factors counsels strongly in favor of severance of the cases.

## II.    CONCLUSION

For the reasons stated above, Gray and Allan Myers's Joint Motion, ECF 286, is GRANTED. This Court will hold two separate trials. One trial will address claims between Medline, York, and GTA; the other will address claims between Medline, Gray, and Allan Myers. This Court will set a telephonic scheduling conference in the near future to discuss trial scheduling,

---

[4] The Gray-Allen Myers subcontract contains a jury waiver clause which states: "matters litigated in Court shall be determined by a judge and not a jury." ECF 196-6 at 32. Movants also point to the contract between Gray and Medline, which waives the parties' right to have a jury trial. *See* ECF 196-5 at 45 ("Owner [Medline] and Design-Builder [Gray] hereby knowingly, irrevocably, voluntarily and intentionally waive any right either may have to a trial by jury in respect of any action, proceeding or counterclaim based upon the Design-Build Documents, or arising out of under, or in connection with the construction of the Work or any course of conduct, course of dealing, statements (whether verbal or written) or actions of any party.").

and counsel are instructed to confer about generally acceptable time frames, keeping in mind the advanced age of this case and this Court's desire to bring it to prompt resolution.

      A separate Order follows.


Dated: May 11, 2023                                                                  /s/
                                                                        Stephanie A. Gallagher
                                                                        United States District Judge